Hans–Henning STIER, Petitioner,

v.

**READING & BATES CORPORATION**
and Reading & Bates Drilling
Company, Respondents.

No. 96–1165.

Supreme Court of Texas.

Argued Sept. 9, 1998.

Decided April 8, 1999.

Robert D. Green, Michael L. Davis, Houston, for Petitioner.

John Pearson, James J. Sentner, Jr., Orin H. Lewis, Giorgio Caflisch, Houston, for Respondents.

Justice OWEN delivered the opinion of the Court in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH and Justice ABBOTT join.

A citizen of Germany who resided in Brazil · was injured while working on a mobile offshore drilling vessel that was berthed at a terminal in Trinidad. He sued his employer, whose principal offices were in Texas, asserting claims under the Jones Act, general maritime law, the substantive laws of Texas, and the laws of Trinidad. The trial court granted summary judgment for his employer on the basis that all claims were preempted · by federal law. The court of appeals affirmed. 1996 WL 490625. We affirm the judgment of the court of appeals regarding the claims based on Texas law because those claims are preempted by section 688(b) of the Jones Act, 46 U.S.C. app. § 688(b). We reverse the judgment of the court of appeals in part and remand the claims arising under Trinidad law to the trial court because those claims are not preempted by federal law.

I

At the time of his injury, Hans–Henning Stier was a citizen of Germany who resided in Brazil. He was not a citizen or resident alien of the United States. Stier was employed by Reading & Bates Drilling Co., a Texas-based company, as a worker in its offshore drilling business and had been employed by that company for more than seventeen years. Over the years of his employment, Reading & Bates periodically brought Stier to the United States for training, and Stier had frequent contact with his employer's Houston office by mail and telephone. Stier maintained bank accounts in Texas or Florida. However, his work assignments from Reading & Bates have always been in locales other than the United States or its territorial waters.

During the four years prior to his injury, Stier worked as a mechanic on a mobile drilling rig that was an American flag vessel operating in the territorial waters of Trinidad. When Stier's injury occurred, the rig was docked in Trinidad awaiting another assignment. Stier was dismantling and reassembling the crown block on

the deck of the rig when he was hit in the head by a hook on a sling operated by other employees of Reading & Bates. Stier was taken by air ambulance to Florida where he was hospitalized for those injuries, and he subsequently received treatment from Houston physicians and hospitals.

Stier sued Reading & Bates Drilling Co. and its parent company Reading & Bates Corporation in state district court in Houston, Texas, where both companies maintain their principal offices. As there is no need to distinguish between these two corporate entities for purposes of this opinion, we will refer to them jointly as Reading & Bates. Stier asserted claims under the Jones Act and under general maritime law for negligence, unseaworthiness, and maintenance and cure as a vessel crew member. He also asserted claims based on Texas law and, in the alternative, claims under the laws of Trinidad.

Reading & Bates moved for summary judgment, contending that section 688(b) of the Jones Act, 46 U.S.C. app. § 688(b), expressly precludes any claims based on federal statutes or federal common law because Stier had remedies under the laws of Germany, Brazil, and Trinidad. Reading & Bates also contended that section 688(b) of the Jones Act preempts all of Stier's other claims based on Texas substantive law and the laws of Trinidad. The trial court granted Reading & Bates's motion. Stier did not appeal the trial court's adverse rulings regarding his federal law claims, conceding that he is foreclosed from pursuing any federal claims by section 688(b) of the Jones Act. He contends only that he is not foreclosed by section 688(b) from pursuing in a Texas court state-law remedies or remedies under Trinidad law.

The court of appeals affirmed the trial court's judgment in all respects. For the reasons we consider below, we affirm the disposition of Stier's state-law claims but reverse the dismissal of Stier's claims based on Trinidad law and remand them to the trial court.

## II

Until its amendment in 1982, the Jones Act provided that the same remedies available under all statutes of the United States to railroad employees or their personal representatives were available to any seaman who suffered personal injury in the course of employment or to the personal representative of any seaman who died as a result of that personal injury.[1] In addition to the Jones Act, seamen or their survivors have certain remedies under the Death on the High Seas Act (DOHSA), 46 U.S.C. app. §§ 761–67, and general federal maritime law. Further, state law remedies that do not conflict with federal law remedies are available to seamen. *See generally Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (discussing remedies available to seamen).

Prior to 1982, section 688 of the Jones Act did not expressly draw any distinction among seamen on the basis of their citizenship or domicile and did not expressly require that the employment or the injury or death have any nexus with the United States. However, courts have not construed section 688 (now subsection 688(a))

1. Section 688 provided:

   Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

   46 U.S.C. § 688 (1976) (amended 1982).

literally and have not applied it to all foreign seamen. *See Lauritzen v. Larsen,* 345 U.S. 571, 577, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) (observing that Congress did not intend to extend "our law and open[ ] our courts to all alien seafaring men injured anywhere in the world in service of watercraft of every foreign nation"). The availability of remedies under former section 688 (now subsection 688(a)) of the Jones Act or other American maritime law is to be determined by choice-of-law principles as articulated by the United States Supreme Court in *Lauritzen* and other decisions. *See Lauritzen,* 345 U.S. at 583–92, 73 S.Ct. 921; *see, e.g., Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 308–10, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

But trial and appellate courts have not uniformly applied these choice-of-law guidelines. It appears that a seaman such as Stier would not have had a remedy based on former section 688 of the Jones Act in some federal circuits but might have stated a cause of action under decisions of the Second Circuit. *Compare Chiazor v. Transworld Drilling Co.,* 648 F.2d 1015 (5 th Cir. June 1981), *overruled on other grounds by In re Air Crash Disaster,* 821 F.2d 1147 (5 th Cir.1987), *Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d 82 (9 th Cir.1980), *and DeMateos v. Texaco, Inc.,* 562 F.2d 895, 902 & n. 3 (3d Cir.1977) (noting that the Second Circuit has "taken an expansive view on ... export of American maritime law" but declining to take so broad a view of the Jones Act), *with Antypas v. Cia. Maritima San Basilio, S.A.,* 541 F.2d 307 (2d Cir.1976), *and Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470 (2d Cir.1974); *see also Vaz Borralho v. Keydril Co.,* 710 F.2d 207, 210 (5 th Cir. 1983) (discussing the split among the federal circuit courts on choice of law and the availability of the Jones Act to foreign seamen).

In 1982, Congress amended the Jones Act and expressly drew a distinction with regard to certain foreign, nonresident workers in the offshore drilling and exploration industry who were injured while over the continental shelf or in the territorial waters of another country. Congress amended section 688 to designate its then-existing provisions as subsection (a) and to add subsection (b), which provides:

(b) **Limitation for certain aliens; applicability in lieu of other remedy**

(1) No action may be maintained under subsection (a) of this section or under any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred—

(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of offshore mineral or energy resources—including but not limited to drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or transporting supplies, equipment or personnel, but not including transporting those resources by [a] vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces; and

(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions. As used in this paragraph, the term "continental shelf" has the meaning stated in article I of the 1958 Convention on the Continental Shelf.

(2) The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person—

(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or

(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a

remedy is sought maintained citizenship or residency.

46 U.S.C. app. § 688(b).

■ Accordingly, a foreign, nonresident seaman engaged in certain aspects of offshore exploration in the territorial waters of another country may pursue claims under the Jones Act or other maritime laws of the United States, but only if he or she has no remedy under the laws of the nation in whose waters the injury occurred or under the laws of a nation in which the seaman resides or is a citizen. If a remedy exists under the laws of one of those nations, a seaman such as Stier cannot pursue claims under the Jones Act, the DOHSA, or general federal maritime law. *See Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1377 (5th Cir.1988); *Samuel v. Tidewater Marine Servs.,* 943 F.Supp. 644, 646 (E.D.La.1996); *Brown v. Atwood Oceanics, Inc.,* 676 F.Supp. 720, 721 (M.D.La.1988).

The reasoning that prompted the amendment to section 688 of the Jones Act was expressed in a report by the House Committee on Merchant Marine and Fisheries, from which the bill amending the Act originated. *See* H.R. REP. No. 97–863 (1982).[2] One of the fundamental conclusions of the House Report was that there were sound reasons to draw distinctions between traditional, blue-water seamen and foreign seamen engaged in the offshore exploration industry who worked in the territorial waters of another nation. The House Report recounted that traditional maritime activities did not have a constant site of operations and that traditional seagoing vessels passed through the jurisdictions of many different nations. *Id.* at 2. The report explained that because the situs of a blue-water vessel constantly changes, maritime law historically has "recognized the limitations of applying the 'place of injury' concept" to maritime torts. *Id.* The report observed that "the more

constant law of the flag has been held to govern most maritime torts." *Id.* However, the House Report concluded that these reasons for extending Jones Act remedies to seamen killed or injured in traditional activities of the maritime industry did not apply to an offshore oil worker because offshore exploration activities are "localized, with most workers never leaving their own national waters." *Id.* at 4.

The report also observed that United States companies operating in the territorial waters of another nation were subject to that nation's laws and to the jurisdiction of that nation's courts. *Id.* The report concluded, "[f]inally, there is another nation with a greater interest in regulating the conduct in question." *Id.* The House Report identified several additional concerns and objectives.

First, the lack of uniformity in applying the Jones Act to foreign seamen had not escaped the notice of the House Committee. The House Report observed that some courts had entertained suits under the Jones Act by foreign nationals (citing as an example a suit filed in a Harris County, Texas district court, *id.* at 3 n. 4) while others had not and that:

> [a]s a result, the determination as to whether it is appropriate to commence a suit in the United States depends not on the statutory right granted by the Jones Act but rather on the happenstance of where the suit is instituted or which district judge hears the case. The Committee finds that this lack of uniform treatment is unjustified and unreasonable.

*Id.* at 3.

Second, the report observed that the then-present state of the law "increase[d] the cost of operation of U.S. companies due to higher insurance and legal costs associated with the need to obtain liability coverage to defend an action in two coun-

---

2. The provisions of H.R. 4863 that amended section 688 of the Jones Act were incorporated without substantial change in H.R. 3942,

section 503. *See* 128 CONG. REC. 30053–55 (1982).

tries (the host country and the United States)." *Id.* Third, the House Report expressed the concern that lawsuits by foreign offshore workers had increased court congestion. *Id.* Additionally, the House Report voiced its concern that the United States was unduly extending the laws of our nation into the territories of other sovereign nations:

> [Subsection 688(b)] recognizes the strong interest of foreign nations in regulating conduct occurring within their sovereign territory and directs that U.S. courts should not entertain maritime-based suits brought by foreign workers injured on another nation's Outer Continental Shelf except when no remedy is available to those workers.

> \* \* \*

> The present situation whereby domestic United States law is applied to actions and occurrences within the jurisdiction of a sovereign foreign nation is an unwarranted application and extraterritorial extension of U.S. law and not in accord with our treaties of friendship and navigation.

*Id.* at 6, 7.

The House Report also expressed the desire to place a foreign offshore worker injured in foreign jurisdictions in the same position as his or her "shoreside counterpart" and to "discourage forum shopping and decrease U.S. court expenses and backlogs." *Id.* at 4.

Stier does not dispute that he was a foreign seaman employed in the exploration of offshore energy sources within the meaning of section 688(b) or that he has a remedy for his injuries under the laws of Trinidad, Germany, or Brazil. And Stier now concedes that because he has a remedy in one of those countries, there are no federal-law remedies available to him. The only questions that we must decide are whether, in light of the history and purposes of section 688(b) of the Jones Act and the development of general federal

maritime law, the claims that Stier has asserted under Texas law and alternatively under Trinidad law are preempted. We first examine the legal precepts that govern our preemption analysis.

### III

Historically, courts that have considered preemption issues under maritime law have looked to the admiralty clause of the United States Constitution. *See American Dredging Co. v. Miller,* 510 U.S. 443, 446, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The admiralty clause provides that the federal judicial power "shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2, cl. 1. Decisions in which preemption issues arise under admiralty law typically have not applied or even mentioned the Supremacy Clause and preemption precedent thereunder such as *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), *English v. General Electric Co.,* 496 U.S. 72, 78–86, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), or *Maryland v. Louisiana,* 451 U.S. 725, 746–52, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

■■■ Also pertinent in a preemption analysis in the context of admiralty law is the "saving to suitors" clause of the United States Code, which says:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> > (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333(1). The United States Supreme Court explained the import of the admiralty clause and the "saving to suitors" clause in *American Dredging:* "[S]tate courts 'may not provide a remedy *in rem* for any cause of action within the admiralty jurisdiction.'" 510 U.S. at 446, 114 S.Ct. 981 (quoting *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 124, 44 S.Ct. 274, 68 L.Ed. 582 (1924)). Although

state and federal courts have concurrent jurisdiction over *in personam* maritime causes of action, *see Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), when a state court exercises *in personam* jurisdiction, it may adopt remedies " 'so long as it does not attempt to make changes in the "substantive maritime law." ' " *American Dredging,* 510 U.S. at 447, 114 S.Ct. 981 (quoting *Madruga v. Superior Court of Cal., County of San Diego,* 346 U.S. 556, 561, 74 S.Ct. 298, 98 L.Ed. 290 (1954) (quoting *Red Cross Line,* 264 U.S. at 124, 44 S.Ct. 274)). In *American Dredging,* the Supreme Court relied on *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), for the guiding principle in a preemption analysis under admiralty law. State law may not provide a remedy that " 'works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' " *American Dredging,* 510 U.S. at 447, 114 S.Ct. 981 (quoting *Jensen,* 244 U.S. at 216, 37 S.Ct. 524).

Justice Stevens, in his concurring opinion in *American Dredging,* criticized the Court's continued reliance on *Jensen* and what he termed "an extension of the patchwork maritime pre-emption doctrine" that he would "jettison." *Id.* at 460, 461, 114 S.Ct. 981 (Stevens, J., concurring). Justice Stevens contended that in maritime cases, just as in cases that did not touch upon maritime law, courts "should not lightly conclude that the federal law of the sea pre-empts a duly enacted state statute." *Id.* at 461, 37 S.Ct. 524 (Stevens, J., concurring) (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). He would instead focus on whether a state provision at issue "conflicts with some particular substantive rule of federal statutory or common law, or, perhaps, whether federal maritime rules, while not directly inconsistent, so pervade the subject as to preclude application of state law." *Id.* (Stevens, J.,

concurring). In response to Justice Stevens's criticism, a majority of the Court explained that it relied on *Jensen* in deciding the case before it (*American Dredging*) because the parties and the Solicitor General had relied on *Jensen,* and the Court found it "inappropriate to overrule *Jensen* in dictum, and without argument or even invitation." *Id.* at 447 n. 1, 37 S.Ct. 524.

We cannot predict whether the actual holding in *Jensen* may be overruled at some point by the Unites States Supreme Court and if so, whether the Supreme Court would nevertheless continue to analyze preemption questions arising in the context of maritime law by determining whether the state law at issue concerns "a 'characteristic feature' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law." *Id.* at 447, 37 S.Ct. 524. However, for the reasons considered below, we conclude that regardless of whether we apply the *Jensen* parameters or those suggested by Justice Stevens, state-law claims such as those asserted by Stier are impliedly preempted by section 688(b) and general federal maritime law.

**IV**

Providing a remedy to an injured seaman is a "characteristic feature[ ]" of admiralty. *See Southern Pac. Co. v. Jensen,* 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Under a *Jensen* analysis, the only issue with which we are concerned in this case is whether uniform application of federal law to claims by a foreign, nonresident seamen who was injured in the territorial waters of another nation while working in the offshore exploration industry is necessary to maintain the "proper harmony" of maritime law or to prevent "material prejudice to the characteristic features" of maritime law. *See id.; American Dredging Co. v. Miller,* 510 U.S. 443, 447, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). Alternatively, if we utilize the type of implied preemption analysis that

has been applied in non-maritime cases, we must determine whether the scope of section 688(b) indicates that Congress intended federal law to occupy the field exclusively or whether the extension of state-law remedies to a foreign seaman such as Stier is in actual conflict with the intent of Congress. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (citing *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). In determining congressional intent, we look at the structure and purpose of the statute as a whole not only as revealed in the text "but [also] through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

Congress has created a uniform plan of maritime tort law by means of the Jones Act, 46 U.S.C. app. § 688, and the Death on the High Seas Act (DOHSA), 46 U.S.C. app. §§ 761–67. *See generally Miles v. Apex Marine Corp.*, 498 U.S. 19, 37, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The United States Supreme Court has recognized that although a body of court-made general federal maritime law also exists, Congress "retains superior authority in these matters" and that courts exercising admiralty jurisdiction "must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." *Id.* at 27, 111 S.Ct. 317.

Cognizant of these limitations, federal courts have supplemented gaps in statutory maritime law with general maritime law, but only when that court-made law did not go beyond congressional intent. *See id.* at 31, 111 S.Ct. 317 (explaining the history and rationale of *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)); *see also Moragne*, 398 U.S. at 409, 90 S.Ct. 1772 (creating a federal maritime cause of action for wrongful death in territorial wa-

ters based on unseaworthiness). Federal courts have also looked at times to state law to supplement federal maritime law. *See Miles*, 498 U.S. at 33–34, 111 S.Ct. 317. But the United States Supreme Court has held that when Congress has expressly or implicitly limited remedies available under maritime law, neither state statutes, state common law, nor general federal maritime law can enlarge those remedies. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (holding that nonpecuniary damages under state law are unavailable because DOHSA limits damages to pecuniary losses); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 623–24, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (holding that damages for loss of society were unavailable under general maritime law because DOHSA precludes damages for loss of society).

The historical interplay between federal maritime law and state law was considered in some detail in *Yamaha Motor Corp. U.S.A. v. Calhoun.* *See* 516 U.S. 199, 206–16, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). The principles delineated in that decision control the disposition of Stier's claims in this case. The court explained in *Yamaha* that a state's remedial scheme "might be 'more generous than federal law' but nevertheless could apply" if Congress had expressed no concern "'about a disparity between adequate federal benefits and *superior* state benefits.'" *Id.* at 215, 116 S.Ct. 619 (quoting from *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980)). But when "Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement" of statutory remedies. *Id.*

In *Yamaha*, a twelve-year-old girl was killed in the territorial waters of Puerto Rico when the jet ski she was riding slammed into the side of a ship. In the products liability litigation that ensued against the jet ski manufacturer, the issue before the court was whether the judge-

declared federal maritime wrongful-death cause of action recognized in *Moragne, see* 398 U.S. at 409, 90 S.Ct. 1772, for unseaworthiness displaced remedies available under a state wrongful death statute, including loss of society and loss of support. *See Yamaha,* 516 U.S. at 202–03, 116 S.Ct. 619. The United States Supreme Court held that because the young woman who was killed was not a seaman, a longshore worker, or a person otherwise engaged in a maritime trade, the Congressional intent to limit the remedies of those workers did not apply to her. *See id.* at 205 n. 2, 215, 116 S.Ct. 619. Accordingly, state-law remedies were available to her survivors. *See id.* at 215–16, 116 S.Ct. 619. Further, the injury in *Yamaha* occurred in the territorial waters of the United States. The Supreme Court construed DOHSA[3] to "stop[ ] DOHSA from displacing state law in territorial waters." *Id.* at 216, 116 S.Ct. 619. What is important about *Yamaha* to our analysis of this case is that the Supreme Court explained that when Congress *has* prescribed remedies, the states may not expand them. *See id.* at 215, 116 S.Ct. 619.

In the case before us, there is a comprehensive tort recovery regime in place that governs claims such as the one Stier asserts. And in enacting section 688(b), Congress expressly voiced its concerns about the availability of remedies under our domestic laws to workers like Stier. The legislative history of section 688(b) explained why foreign nationals in the offshore exploration industry should be required to first determine whether they have a remedy under the laws of the country in whose waters they were injured or the country in which they resided or were a citizen before asserting the remedies provided by the Jones Act, DOHSA, or the general maritime laws of the United States. As discussed above, the House Report concluded that there were funda-

mental distinctions between workers in the offshore exploration industry and seamen who worked aboard blue-water vessels. *See* H.R.REP. No. 97–863, at 4 (1982). The report observed that offshore exploration operations generally occurred at sites on the continental shelf or within the territorial waters of a single nation. Offshore vessels did not tend to traverse the open seas or the waters of many different nations. *Id.*

Congress clearly outlined the objectives of section 688(b). As discussed in more detail above, they included uniform application of the law to foreign national offshore workers; reduction of insurance and legal costs of United States companies associated with the need to defend in and to obtain liability coverage in two countries; reduction of court congestion in the United States; curtailment of the undue extension of laws of the United States to other sovereign nations; and the placement of foreign workers in the offshore exploration industry on the same footing as their shoreside counterparts. *See id.* at 3–4.

None of these objectives of section 688(b) could have been achieved if Congress had intended to leave a void that states were free to fill. Indeed, all of the evils the House Report identified would remain. And some, such as forum shopping and the export of American law to other sovereign nations, would be magnified if section 688(b) did not implicitly preempt states from granting a greater remedy to foreign workers than they could obtain under federal law. As we recognized in *Exxon Corp. v. Choo,* the burden placed on international maritime commerce is an important consideration in a preemption analysis:

> The impact on international and interstate maritime commerce is an important consideration when determining whether the essential features of exclu-

---

**3.** Section 767 of DOHSA provides: "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." 46 U.S.C. app. § 767.

sive federal jurisdiction are unduly burdened.

881 S.W.2d 301, 306 (Tex.1994) (citing *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9 th Cir.1990)).

Stier's position would lead to anomalous results that Congress never intended. If the states are free to extend the full panoply of remedies under their laws to foreign workers such as Stier, in many instances a foreign worker will be able to recover damages that a resident American seaman could not. A state's wrongful death laws could allow the survivors of a foreign worker to recover nonpecuniary losses such as loss of society when a United States citizen injured in the same locale could not. Nonpecuniary damages are not available to the dependents of United States seamen. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Similarly, the survivors of a foreign worker could recover lost future earnings as damages under some state laws, while the survivors of a U.S. seaman killed in the same locale could not. *Id.* at 33, 111 S.Ct. 317. This is directly contrary to the intent of the Jones Act and to general maritime law principles. *See id.* at 32, 111 S.Ct. 317; *see also Yamaha Motor Corp. U.S.A. v. Calhoun*, 516 U.S. 199, 215, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).

In conducting an implied preemption analysis, we must recognize that Congress has not withdrawn from the oversight of personal injury actions brought by foreign offshore workers. To the contrary, through section 688(b), Congress has extended the preemption it had previously asserted over claims arising under section 688(a). In section 688(b), Congress made the determination that access by foreign nationals such as Stier to remedies under section 688(a) and any other United States law is available upon a showing that there is no remedy under the law of the site of the injury or of the nation in which the foreign worker is a citizen or resides. *See* 46 U.S.C. app. § 688(b). State courts are

not free to ignore this requirement. There is no room for state law to provide a greater remedy when the grant of that remedy would be contrary to the intent of Congress.

**V**

We have found only three decisions that directly address the issue before us today. In *Coto v. J. Ray McDermott, S.A.*, 709 So.2d 1023, 1029 (La.App.1998), a Louisiana intermediate appellate court analyzed in some detail the history of the Jones Act and the legislative history of section 688(b) and held that claims such as those urged by Stier are preempted. The same court reached the same conclusion in *Bolan v. Tidewater, Inc. See* 709 So.2d 1059, 1061 (La.App.1998).

A Texas court of appeals has also held that section 688(b) preempts Texas state-law negligence claims of a foreign seaman who was injured on a mobile drilling platform located off the shore of another nation. *See Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 524–25 (Tex.App.—Texarkana 1993, writ denied). The court in *Lawrenson* concluded that the seaman had a remedy under the laws of the United Kingdom, where he was a citizen, and accordingly, that he could not maintain his Texas-law claims. *See id.* at 526; *see also Jackson v. S.P. Leasing Corp.*, 774 S.W.2d 673, 678 (Tex.App.—Texarkana 1989, writ denied) (holding that section 688(b) preempted the state-law claims of a foreign seaman who was injured aboard an American-owned tugboat in the territorial waters of Mexico).

Stier relies on the Fifth Circuit's decision in *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374 (5 th Cir.1988), but that case did not consider the question presented by Stier's appeal. The only issue in *Camejo* with regard to state-law claims was whether the district court should have remanded them to state court instead of dismissing them under *forum non conveniens. See id.* at 1375. Whether section 688(b) preempted state-law

claims was not considered. The only preemption issue in *Camejo* was whether states are bound to apply federal *forum non conveniens* law. *See id.* at 1382. *Camejo*'s conclusion was that they are, which we now know to have been an erroneous holding. *See American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (holding that states may apply their own laws of *forum non conveniens* in admiralty matters); *Exxon Corp. v. Choo*, 881 S.W.2d 301, 306 (Tex. 1994) (holding that federal maritime doctrine of *forum non conveniens* did not preempt the application of Texas *forum non conveniens* law).

Congress has prescribed the remedies available to foreign seafarers such as Stier. They must first look to the laws of the nation in which they were injured or the laws of the nation in which they are citizens or are domiciled. Remedies under section 688(b) are available only if no remedy is available under those foreign laws.

## VI

■ Stier contends that pursuant to a choice of law provision in his employment agreement with Reading & Bates Drilling Co., the parties agreed to be bound by Texas law, and therefore, he is entitled by contract to assert his tort claims for personal injury under the substantive laws of Texas. The contractual provision on which Stier relies provides in its entirety:

> This agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, U.S.A. In the event any section of this contract or any part of any section is found to be void, or of no legal effect, by the final decision of a court of competent jurisdiction, [Stier] and [Reading & Bates] agree that such Section, or part of any Section, is severable from the balance of this Contract and that the remainder of this Contract shall remain in full force and effect.

This provision, by its terms, applies only to the interpretation and enforcement of the contractual agreement. It does not purport to encompass all disputes between the parties or to encompass tort claims. The claims that Stier asserts arise under Texas tort law. His claims do not rise or fall on the "interpret[ation] and enforce[ment]" of any contractual provision.

■ Stier also contends that Reading & Bates failed to provide a safe place for him to work and that this duty is derived from his contract. But that claim, like all of his claims, sounds in tort and does not concern the interpretation or enforcement of his contract. We held in *Exxon Corp. v. Tidwell* that an employer's duty to provide a safe workplace is generally derived from agency principles. 867 S.W.2d 19, 21 (Tex. 1993). An example serves to illustrate the distinction between the interpretation of a contract and the breach of an employer's duty to provide a safe work place. Suppose that Stier were a resident of Illinois and his employment agreement provided that it was to be governed by the laws of Illinois. And assume that during a visit to Reading & Bates's offices in Texas, Stier slipped and fell on its premises because of an unreasonably dangerous condition that was known to his employer. We would not say that Illinois law applied to Stier's tort claim.

Further, the agreement does not purport to override federal law by affirmatively granting remedies greater than those available under federal law. Even were we to construe the agreement as requiring the application of Texas tort law, it would still be necessary to determine whether the remedy sought was available under Texas law or whether that remedy was foreclosed by paramount federal law. For example, the fact that Texas law governs the rights and obligations of an employer and employee does not mean that Texas worker's compensation remedies would be available if those remedies are inconsistent with federal law. Simply providing in an agreement that Texas law will govern that agreement is not the equivalent of agreeing that the employer will provide tort

remedies greater than those allowed under federal law.

Because Stier's employment agreement does not grant any specific or even general Texas tort law remedies, we do not reach the question of whether section 688(b) would preempt a contractual provision that expressly stated that specific remedies were available to a foreign seaman in addition to those available under federal law. Likewise, we do not reach the question of whether the choice of Texas law in Stier's agreement means that Texas choice-of-law principles would also apply such that there must be a determination of whether Texas law or the law of Trinidad governs Stier's claims. Under the facts of this case, we agree with the implicit holdings of the trial court and the court of appeals that Stier's state-law claims are preempted notwithstanding the provision in his employment agreement.

## VII

■ It does not follow, however, that Stier's claims under Trinidad law are preempted. To the contrary, section 688(b) first directs Stier to the laws of Trinidad, Germany, or Brazil for a remedy. *See* 46 U.S.C. app. § 688(b). The only question is whether state courts may entertain claims based on the laws of another nation in light of section 688(b). Although there is some indication in the House Committee Report that section 688(b) was intended to bar any access to state and federal courts unless there was no other remedy,[4] the sounder reading of section 688(b), at least with regard to its impact on state courts, is that it is a choice-of-law provision. To the extent that *Jackson v. S.P. Leasing Corp.*, 774 S.W.2d 673 (Tex. App.—Texarkana 1989, writ denied), indicates that section 688(b) limits the jurisdiction of state courts, it is disapproved.

We recognize that if a state court were to adjudicate the merits of a foreign offshore worker's claims under the laws of another nation, at least some of the objectives articulated by the House Committee in adding section 688(b) to the Jones Act would not be fully achieved. For example, companies may still perceive the need to have insurance coverage for defense costs in more than one forum, and court congestion from foreign workers' claims will not be entirely eliminated. However, as noted above, the United States Supreme Court held in *American Dredging Co. v. Miller*, that in maritime cases, states may apply their own *forum non conveniens* laws. 510 U.S. 443, 457, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). State *forum non conveniens* laws are not a "'characteristic feature'" of admiralty law and do not interfere with the "'proper harmony'" of maritime law. *American Dredging*, 510 U.S. at 447, 114 S.Ct. 981 (quoting *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)); *see also Exxon Corp. v. Choo*, 881 S.W.2d 301, 306 (Tex.1994). It follows that if a state chooses to entertain the claims of a seaman based on the laws of another nation,

---

4. The House Committee on Merchant Marine and Fisheries wrote in its committee report that the Jones Act amendment

> merely requires that an injured foreign worker utilize his foreign remedy *before seeking relief in a U.S. court.*
>
> The Committee finds that the proposed legislation does not abridge the fundamental right to be compensated for a work-related injury; it merely requires that the worker utilize administrative and judicial remedies available in his own nation or the host nation *before seeking relief in the U.S. court system.*
>
> Numerous Federal and State statutes restrict access to various U.S. courts. For example, workman's compensation systems usually require a worker to have his claim determined by a compensation board rather than a court.
>
> Just as a workman's compensation system can constitutionally require the utilization of an administrative agency, Congress by this legislation will require that nonresident workers utilize the administrative and judicial systems of the nation with the greater contact and interest in the incident giving rise to that worker's claim.

H.R.Rep. No. 97–863, at 7 (1982) (emphasis added).

that exercise of jurisdiction is not preempted.

In remanding Stier's claim to the trial court, we express no opinion on whether section 71.031 of the Texas Civil Practice and Remedies Code applies to admiralty matters. *See* TEX. CIV. PRAC. & REM.CODE § 71.031. We hold only that the trial court is not preempted from deciding whether *forum non conveniens* applies and if so, whether his claims based on Trinidad law should proceed in a Texas court.

\* \* \* \* \*

For the reasons set forth above, we affirm the judgment of the court of appeals in part, reverse in part, and remand the Trinidad-law claims to the trial court for further disposition.

Justice O'NEILL did not participate in the decision.

Justice BAKER, filed a dissenting opinion, in which Justice HANKINSON and Justice GONZALES joined.

Justice BAKER, joined by Justice HANKINSON and Justice GONZALES, dissenting.

Because the Court holds that the Jones Act preempts Stier's state law claims, I dissent.

## I.  THE COURT'S OPINION

The Court holds that the Jones Act preempts Stier's state law claims. But section 688(b) only prohibits actions under section 688(a) of the Jones Act or any other maritime law of the United States. Section 688(b) does not say anything about state tort laws, state procedural laws, or the availability of state courts as a forum, even for foreign law claims.

Nevertheless, the Court reaches the result it wants by avoiding a plain reading of the statute. The Court relies instead on implied preemption and the United States Supreme Court's opinion in *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). To do so relies more on "sinking sand" than "solid ground." Even the Court that issued *Jensen* did not unanimously accept *Jensen's* rationale—witness Justice Holmes' vigorous dissent. *See Jensen*, 244 U.S. at 218–233, 37 S.Ct. 524. And, *Jensen's* efficacy has been downhill ever since, culminating in *American Dredging*. *See American Dredging*, 510 U.S. 443, 447 n. 1, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); *see also P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 73 n. 2, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Kossick v. United Fruit Co.*, 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)(Frankfurter, J., dissenting); *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 429, 74 S.Ct. 608, 98 L.Ed. 806 (1954)(Black, J., dissenting); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 516, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)(Black, J., dissenting). In *American Dredging*, the United States Supreme Court explained that it relied on *Jensen* only because the parties had done so, and that the Court did not want to overrule *Jensen* "in dictum, and without argument or even invitation." *American Dredging*, 510 U.S. at 447 n. 1, 114 S.Ct. 981. Here, neither Reading & Bates nor Stier so much as cite *Jensen* in their briefs. Moreover, the Court acknowledges that the principles delineated in *Yamaha v. Calhoun* control the disposition of Stier's claims. *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Yet, *Yamaha*, the United States Supreme Court's latest maritime federalism opinion, does not even cite *Jensen*. *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. at 199, 116 S.Ct. 619. A noted commentator sums up *Jensen*'s worth:

> In times like these it takes a particularly admirable kind of hard-headedness to claim … that *Jensen* is still our best guide to the applicability of state law in Maritime cases. In fact, *Jensen* has never been a good guide, and today is completely discredited. Anyone who places serious reliance on any of its

teachings is as likely to be fooled as enlightened.

See Robertson, *The Applicability of State Law in Maritime Cases After Yamaha Motor Corp. v. Calhoun*, 21 Tul. Mar. L.J. 81, 89 (1996).

To bolster its implied-preemption analysis, the Court relies on legislative history. But section 688(b)'s legislative history is "sparse and confusing" and does not unequivocally support the Court's holding. *See Vaz Borralho v. Keydril Co.*, 710 F.2d 207, 210 (5 th Cir.1983); *see also* Robertson & Speck, *Access to State Courts in Transnational Personal Injury Cases: Forum Non Conveniens and Antitrust Injunctions*, 68 Tex. L.Rev. 937, 947 n.56 (1990). Moreover, the Court's reliance on it to foreclose Stier's state claims but not his Trinidadian claims in state court is incongruous. As the Court admits, the legislative history that it cites to support preemption of state law claims would similarly support preemption of foreign law claims in U.S. courts. In addition, the cases the Court cites hold that 688(b) preempts foreign as well as state claims in U.S. courts. *See Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 526 (Tex. App.—Texarkana 1993, writ denied); *Coto v. J. Ray McDermott, S.A.*, 709 So.2d 1023, 1027 (La.App.1998); *Bolan v. Tidewater, Inc.*, 709 So.2d 1059, 1061 (La.App.1998).

## II. APPLICABLE LAW

Preemption is an affirmative defense. A party seeking summary judgment based on preemption has the burden to show preemption as a matter of law. *See Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496, 497–98 (Tex.App.—Houston [1 st Dist.] 1994), *aff'd*, 920 S.W.2d 274 (Tex. 1996). Maritime preemption analysis is quite similar, if not identical, to general federal preemption analysis. *See Calhoun v. Yamaha Motor Corp.*, 40 F.3d 622, 629 (3 rd Cir.1994), *aff'd*, 516 U.S. at 199, 116 S.Ct. 619. A federal law may expressly or impliedly preempt state law. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 286–87, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995);

*Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 341, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1, 4 (Tex.1998). In determining whether there is express preemption, we narrowly construe preemption clauses, and without an express claim-preemption provision, we presume that there is no preemption. *See Hyundai*, 974 S.W.2d at 5; *Moore*, 889 S.W.2d at 250. Federal maritime law impliedly preempts state law when Congress intended that federal law occupy the field or when there is an actual conflict between state and federal law. *See Calhoun*, 40 F.3d at 629. Federal maritime law does not impliedly preempt state law in areas of the law in which there is no comprehensive Congressional scheme. *See Yamaha*, 516 U.S. at 215, 116 S.Ct. 619. Further, federal maritime claims preempt state remedies only when federal maritime law applies and is invoked. *See De La Lastra*, 852 S.W.2d at 916, 919.

## III. ANALYSIS

While section 688(b) precludes *federal claims* for certain foreign seamen like Stier, nothing in section 688(b) preempts state substantive tort law claims or prohibits state procedural law from allowing a state forum for foreign claims. Such claims do not fall within section 688(b)'s preclusion of section 688(a) claims or claims under "any other maritime law of the United States" by certain foreign seamen. *See Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1376 (5 th Cir. 1988). Nor does section 688(b) impliedly preempt any state or foreign law claims Stier may have. If federal maritime law does not apply or is unavailable, federal maritime law cannot preempt whatever state law might apply. *See De La Lastra*, 852 S.W.2d at 919.

Reading & Bates mischaracterizes the Jones Act as a comprehensive Congressional scheme providing a limited remedy for foreign workers, apparently in an attempt to contrast the lack of a comprehensive Congressional scheme for "nonseafarers" noted in *Yamaha*. *See Yamaha*, 516

U.S. at 215, 116 S.Ct. 619. But the Jones Act does not prescribe a comprehensive tort recovery regime for foreign workers. Instead, it expressly contemplates that some foreign workers injured in foreign waters can still bring federal maritime claims, either because they are not employed by companies engaged in certain enterprises or because they lack a remedy under the law of other jurisdictions. *See* 46 U.S.C. § 688(b)(1)(A) & (b)(2). Thus, section 688(b) is not particularly concerned about ensuring uniformity or avoiding inconsistent results. Nor does section 688(b) evince any concern about the actual availability or convenience of other forums in which to assert alternative remedies.

## IV. CONCLUSION

Because the Jones Act does not preempt state substantive and procedural law in this case, I would hold that Stier is free to pursue any state and foreign law claims in state court under state procedural law. Because such claims are not preempted as a matter of law, I would reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings.

Because the Court holds to the contrary, I respectfully dissent.