Opinion issued August 4, 2005








     





In The
Court of Appeals
For The
First District of Texas




NO. 01–03–01129–CV




FAIRMONT SUPPLY COMPANY, Appellant

V.

HOOKS INDUSTRIAL, INC., Appellee

* * * * 

HOOKS INDUSTRIAL, INC., Appellant 

V.

FAIRMONT SUPPLY COMPANY, Appellee




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 98–22695




O P I N I O N
          In this breach of contract case, the trial court awarded Hooks Industrial, Inc.
(“Hooks”) $1,200,000 in lost profit-damages against Fairmont Supply Company
(“Fairmont”), but denied Hooks’s attorney’s fees claim. Both Fairmont and Hooks
appeal; each raise one issue. Fairmont complains that the trial court abused its
discretion in admitting the opinion testimony of Hooks’s damages expert, regarding
the calculation of lost-profit damages. Hooks contends that the trial court erred in
concluding that Pennsylvania law governs its claim for attorney’s fees. 
          We affirm.
                                                        Background
          Hooks and Fairmont entered into a “Strategic Distribution and Alliance
Agreement” (“Alliance Agreement”) by which Fairmont agreed to “use Hooks as their
[sic] exclusive supplier” for all of the products defined in the contract. The Alliance
Agreement remained in effect for 27 months. Hooks later discovered that Fairmont
had purchased approximately $62 million worth of products from other suppliers that
Fairmont was contractually required to purchase from Hooks. 
          Hooks sued Fairmont for breach of contract, negligent misrepresentation, and
fraud, seeking to recover its lost profits for the products that Fairmont had failed to
purchase as required under the Alliance Agreement. In support of its lost-profit
claim, Hooks offered the opinion of its damages expert, Jeffrey Compton. Fairmont
filed a pre-trial motion to exclude the expert opinion of Compton, which the trial
court denied.
          The jury found in Hooks’s favor on its breach of contract and negligent
misrepresentation claims. Hooks elected to have judgment entered on the $1,200,000
in lost-profit damages awarded by the jury for breach of contract. 
          The parties agreed that the trial court would decide, post-verdict, whether
Hooks could recover its attorney’s fees related to its breach of contract claim. The
determinative issue was whether Texas law or Pennsylvania law governed. Based on
a choice-of-law provision found in the Alliance Agreement, the trial court concluded
that Pennsylvania law controlled whether Hooks was entitled to recover its attorney’s
fees. It is undisputed that Pennsylvania law generally does not allow an award of
attorney’s fees for breach of a contract, absent an agreement by the parties that such
fees are recoverable. Fairmont and Hooks had not agreed that attorney’s fees were
recoverable in the event of a breach of contract. Accordingly, the trial court denied
Hooks’s attorney’s fees request.
 
 
Lost-Profit Award
          In its sole issue, Fairmont complains that the trial court erred in admitting the
opinion testimony of Compton, Hooks’s damages expert. Excluding Compton’s
challenged testimony, Fairmont contends that no competent evidence supports the
lost-profit award. 
          No dispute exists as to the appropriate formula used to determine lost profits
in this case. At trial, Compton testified that lost profits are calculated by multiplying
expected sales by gross profit margin, subtracting incremental expenses, and applying
a discount rate. Fairmont’s damages expert agreed that this was the appropriate
formula to calculate lost profits. Fairmont, however, takes issue with the method that
Compton used to calculate the following three formula variables: Hooks’s expected
sales, gross profit margin, and incremental expenses. The calculation method used
by Compton to ascertain these three formula variables is termed the “yardstick
approach” by the parties. Utilizing this approach, Compton projected Hooks’s lost
profits to be $1,684,199. In its motion to exclude, Fairmont challenged Compton’s
opinion testimony relating to his calculation of these formula variables based on the
yardstick approach.
          Compton testified that the yardstick approach is employed to calculate lost
profits by analyzing the sales and profits of comparable businesses. Fairmont
generally does not dispute the yardstick approach as an accounting method; rather,
it argues that its application is not appropriate to determine lost profits in this case. 
Fairmont also takes issue with Compton’s determination that a comparable business
to Hooks, with regard to performance of the Alliance Agreement, would be a
“manufacturer’s agent.” And Fairmont disputes the reliability of a survey conducted
by an association of manufacturer’s agents used by Compton to determine the formula
variables. Specifically, Fairmont challenges the reliability of Compton’s use of data
from the survey to extrapolate the figures for Hooks’s expected sales, gross profit
margin, and incremental expenses, which Compton then used to calculate Hooks’s
lost profits. 
          Regardless of whether the trial court erred in admitting Compton’s challenged
testimony, we conclude that such error was harmless. We will not reverse a trial court
for an erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment. See Tex. R. App. P. 44.1; see also Gee v. Liberty Mut. Fire
Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). Error in admitting evidence is generally
harmless if the contested evidence is merely cumulative of properly admitted
evidence. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 230 (Tex. 1990). We
examine the entire record to determine whether the judgment is controlled by the
evidence that should have been excluded. Id. 
          Hooks points out that, in addition to Compton’s testimony regarding the
yardstick method of valuation, other unobjected-to testimony was admitted that
supports the jury’s lost profits award. Specifically, alternate values were admitted,
without objection, for the variables in the lost-profit formula. 
          Evidence was admitted, establishing that John Valentine, Hooks’s president,
had also determined the projected lost sales due to Fairmont’s breach and the
profitability of the Alliance Agreement had it been performed.


 In particular, Hooks
presented testimony, without objection, regarding Valentine’s independent
determination of Hooks’s expected sales and profit margin. Valentine testified that
Hooks would have made $28,070,000 in sales had Fairmont performed the Alliance
Agreement. Although it made no objection to this portion of Valentine’s testimony
before or during trial, on appeal, Fairmont contends that Valentine’s expected-sales
figure is unreliable because it is not based on “objective, facts, figures, or data.” 
Despite Fairmont’s contention, the record reveals that Valentine testified about the
source and method that he used for determining the expected sales figure. According
to Valentine, he reviewed Fairmont’s sales data for the period of the contract’s 27-month term. The sales data information was contained in Fairmont’s “flat files,”
which Fairmont produced during discovery. On direct examination, Valentine gave
detailed testimony about his review and analysis of Fairmont’s flat files. In addition,
six separate exhibits containing summaries of information found in Fairmont’s flat
files were admitted at trial and used to support Valentine’s testimony on this point. 
          Without objection, Valentine also testified that, had Fairmont performed under
the Alliance Agreement, Hooks’s profit margin would have been 27.5 percent. 
Valentine explained that this profit margin was indicated by (1) pricing reviews that
Hooks had performed for Fairmont during the term of the contract, (2) the few actual
purchases that Fairmont had made under the Alliance Agreement, and (3) quotations
that Hooks had given to Fairmont for products, which Fairmont never purchased. 
Valentine testified that 27.5 percent was also Hooks’s historic profit margin. 
          Compton testified that he had determined that Hooks’s “overhead” or
incremental expenses historically had been 16 percent. Compton acknowledged that 
this was a lesser amount than he had determined using the yardstick approach.


 
Fairmont made no objection to Compton’s testimony on this point in the trial court
and does not challenge it on appeal. Compton also testified, without objection, that
the applicable discount rate was 33 percent. Fairmont’s financial expert testified that
he believed the appropriate discount rate was 36 percent.
          From the unobjected-to evidence presented at trial, the jury could have
assigned the following values to the variables in the lost-profit formula: (1)
$28,070,000 for expected sales, (2) 27.5 percent for profit margin, (3) 16 percent for
incremental expenses, and (4) 33 or 36 percent for the discount rate. Assuming the
jury made the lost profit calculation applying these values, the jury’s $1,200,000
award is within the range of the evidence. 
          After reviewing the record, and without deciding whether the trial court erred
in admitting Compton’s objected-to testimony, we conclude sufficient evidence is
found in the record to render any error harmless. Compton’s testimony was
cumulative of other evidence admitted without objection, supporting the jury’s
damages award. Fairmont has failed to show that Compton’s challenged testimony
probably caused the rendition of an improper judgment. Thus, we hold that the trial
court’s ruling, even if erroneous, did not amount to harmful error. See VingCard A.S.
v. Merrimac Hospitality Sys., Inc., 59 S.W.3d 847, 859 (Tex. App.—Fort Worth
2001, pet. denied) (holding that error in admission of manufacturer’s expert’s
testimony regarding loss of projected future sales was harmless because it was merely
cumulative to testimony of manufacturer’s president). 
          We overrule Fairmont’s sole issue.
Attorney’s Fees
          In its sole issue, Hooks challenges the trial court’s denial of its request for
attorney’s fees. The trial court’s ruling was based on its conclusion of law that “the
issue of attorneys’ fees in this case is governed by Pennsylvania law, and under
Pennsylvania law, Hooks is not entitled to recover attorney’s fees . . . .” Hooks does
not dispute that, under Pennsylvania law, it would not be entitled to attorney’s fees
for successfully prosecuting its breach of contract claim; rather, Hooks contends that
the trial court erred in ruling that Pennsylvania law governs this issue. Hooks asserts
that Texas law applies and that, under Texas Civil Practice and Remedies Code
(“CPRC”) section 38.001(8), it is entitled to attorney’s fees. See Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(8) (Vernon 1997) (allowing recovery of attorney’s fees
“in addition to the amount of a valid claim” for breach of contract). Fairmont
responds that the trial court properly applied Pennsylvania law pursuant to a choice-of-law provision in the Alliance Agreement. Because it is a question of law, we
review the trial court’s decision to apply Pennsylvania law to the attorney’s fees issue
de novo. See Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 672 (Tex. 2004). 
          The choice-of-law provision found in paragraph 21 of the Alliance Agreement
reads as follows: 
                    21.     CONTROLLING LAW
The validity, construction and performance of this Agreement
shall be determined in accordance with the internal laws of the
Commonwealth of Pennsylvania applicable to agreements to be
performed within that State.
          Hooks characterizes the choice-of-law provision as a “narrow” one that does
not encompass the issue of attorney’s fees. In this regard, Hooks asserts as follows: 
[The choice of law provision] does not provide broadly that
Pennsylvania law governs all issues relating to or arising from the
Agreement. Instead, it provides only that Pennsylvania law applies to
certain limited issues: whether the Agreement was validly formed, how
it should be interpreted or construed, and whether it has been properly
performed or breached. The recovery of attorney’s fees relates to the
types of remedies available for a breach of the Agreement and to the
amount of Hooks’ recovery for breach. These issues are not subject to
the . . . choice of law provision. 
          In support of its position that the choice-of-law provision does not encompass 
the attorney’s fees issue, Hooks advances the conflicts-of-law principle known as
“depecage”—a process of applying the laws of different states to discrete issues
within the same case. See Willis L.M. Reese, Depecage: A Common Phenomenon in
Choice of Law, 73 Colum. L. Rev. 58, 73–75 (1973). We do not dispute the validity
of depecage, only the appropriateness of its application to the attorney’s fees issue in
this case. To be sure, the following cases cited by Hooks support its position that not
all claims in a case are necessarily governed by a choice-of-law provision that
expressly governs only contractual matters: Stier v. Reading & Bates Corp., 992
S.W.2d 423, 433 (Tex. 1999) (concluding that Texas choice-of-law clause in
employment agreement did not encompass tort claims for personal injury arising out
of employment); Covert Chevrolet-Oldsmobile, Inc. v. Gen. Motors Corp., No. 05-00-01170-CV, 2001 WL 950274, at *2–3 (Tex. App.—Dallas Aug. 21, 2001, no pet.)
(not designated for publication) (holding that Virginia choice-of-law clause did not
apply to indemnification claims when such claims were based on Texas statutes and
Texas common law and were not based on indemnification provision found in
contract containing choice-of-law provision); Benchmark v. Elecs., Inc. v. J.M. Huber
Corp., 343 F.3d 719, 726–27 (5th Cir. 2003) (holding that, when agreement’s choice-of-law provision stated that “[the] Agreement shall be governed by, and construed in
accordance with, the internal laws of the State of New York,” agreement would be
construed under New York law, but that plaintiff’s tort claims would be governed by
Texas law). 
          Unlike the claims in the cases cited by Hooks, the attorney’s fees claim here
arises directly from a breach of the contract containing the choice-of-law provision. 
In contrast, the claims in the cases relied on by Hooks, to which the choice-of-law
provisions were held not to apply, were independent causes of action and were
derived from separate sources of liability, such as tort law.


 
          In Stier, the plaintiff, a Jones Act seaman, contended that his personal-injury
claims were governed by the substantive laws of Texas, rather than federal maritime
law. 992 S.W.3d at 433. In this regard, Stier relied on his employment agreement’s
choice-of-law provision, which read that the contract “shall be interpreted and
enforced in accordance with the laws of the State of Texas.” Id. The Stier court
concluded that the choice-of-law provision did not purport to encompass tort claims
and did not entitle Stier to assert his tort claims pursuant to the substantive laws of
Texas. Id. Citing the language of the choice-of-law provision, the Stier court
reasoned that Stier’s “claims do not rise or fall on the ‘interpret[ation] and
enforce[ment]’ of any contractual provision.” Id. We find the reasoning of Stier to
be instructive.
 
          Here, the choice-of-law provision in the Alliance Agreement expressly governs 
issues of contractual performance. And it is undisputed that the liability for
Fairmont’s contractual non-performance was governed by Pennsylvania law. 
Undeniably, Hooks could not assert an attorney’s fees claim but for its claim against
Fairmont for non-performance of the Alliance Agreement. Distinct from the subject
claims in the cases that it cites, Hooks’s attorney’s fees claim is not an independent
cause of action; rather, Hooks asserts such claim as a right derived from its successful
prosecution of its breach of contract cause of action. Thus, unlike the tort claims in
Stier, Hooks’s attorney’s fees claim does “rise or fall” on Fairmont’s performance,
or non-performance, of the Alliance Agreement.


 See id. That is, the award of
attorney’s fees is inextricably intertwined with the substantive issue of contractual
liability—an issue that is undisputably governed by the choice-of-law provision. 
          Such conclusion is reinforced by the realization that the parties in this case
could have contractually allocated attorney’s fees, if they had so chosen. Though
Pennsylvania law does not statutorily allow the recovery of attorney’s fees in breach
of contract cases, it does permit parties to contractually allocate attorney’s fees. See
Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co., 404 Pa. 541, 548, 173
A.2d 109, 113 (Pa. 1961) (stating that attorney’s fees are recoverable “when clearly
agreed to by the parties”). Here, a contractual provision governing attorney’s fees is
conspicuously absent. Having chosen Pennsylvania law to govern substantive issues
of liability arising from non-performance of the contract, the parties’ implicit decision
not to address the issue of attorney’s fees indicates their expectation that
Pennsylvania law would likewise apply to that issue. No indication exists that the
parties intended to have Texas law apply to an isolated issue arising from the breach
of the contract, such as attorney’s fees. In contrast, every indication exists that the
parties shaped their conduct in light of Pennsylvania law. 
          We conclude that attorney’s fees are part of the substantive contractual issues,
encompassed within the Alliance Agreement, that are governed by the law of the
jurisdiction chosen by the parties: Pennsylvania.


 See Rapp Collins Worldwide, Inc.
v. Mohr, 982 S.W.2d 478, 487–88 (Tex. App.—Dallas 1998, no pet.) (concluding that
New York law applied to issues of attorney’s fees when contract provided that New
York law applied to substantive issues); Boyd Rosene & Assocs., Inc. v. Kansas Mun.
Gas Agency, 174 F.3d 1115, 1127–28 (10th Cir. 1999) (concluding that issue of
attorney’s fees was substantive issue controlled by law of jurisdiction designated in
contract’s choice-of-law provision, even though contract did not expressly address
attorney’s fees issue); Katz v. Berisford Int’l PLC, No. 96 Civ. 8695(JGK), 2000 WL
959721, at *8 (S.D.N.Y July 10, 2000) (concluding that law of jurisdiction named in
contract’s choice-of-law provision applied to attorney’s fees issue even though
contract did not expressly address attorney’s fees issue); Atchison Casting Corp. v.
Dofasco, Inc., No. 93–2447–JWL, 1995 WL 655183, at *8–9 (D. Kan. Oct. 24, 1995)
(holding that attorney’s fees are substantive in nature because contract, though silent
on attorney’s fees, provided for Canadian law to govern, tending to show that parties
had shaped their conduct in light of Canadian law); El Paso Natural Gas Co. v.
Amoco Prod. Co., Civ. A No. 12083, 1994 WL 728816, at *5 (Del. Ch. Dec. 16,
1994) (concluding that parties made award of attorney’s fees substantive contractual
right by designating Texas law as governing, even though contract did not address
attorney’s fees). 
          We hold that the trial court properly determined that Pennsylvania law
governed the issue of attorney’s fees in this case.


 We overrule Hooks’s sole issue.



Conclusion
          We affirm the judgment of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.