IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 07-0040
════════════
 
 
In re Global Sante Fe 
Corporation, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued January 16, 2008
 
 
            
Justice Willett delivered 
the opinion of the Court.
 
            
In this original proceeding, GlobalSantaFe 
Corp. (GSF) asks this Court to direct the silica MDL pretrial court to vacate 
its order remanding this case to the trial court where it was originally filed. 
The pretrial court concluded that Chapter 90 of the Civil Practice and Remedies 
Code, applicable to certain silica-related cases and under which the case had 
been transferred to the pretrial court, was inoperative because it was preempted 
by the Jones Act, a federal maritime statute. We agree with GSF that the general 
procedural framework set out in Chapter 90 is not preempted, although we also 
hold that Chapter 90's minimal-impairment provision relating to silica claims is 
preempted. We conditionally grant mandamus relief.
I. Background
            
In May 2003, John Lopez sued GSF under the Jones Act, alleging injuries 
from exposure to asbestos and silica while employed by GSF aboard a vessel.[1] Lopez filed his Jones Act suit in state 
court, as allowed by federal law,[2] in the 55th district court of Harris County. 
            
Two years later, Chapter 90 of the Civil Practice and Remedies Code 
became effective,[3] adopting unique procedures for 
personal-injury actions alleging injuries from silica and asbestos.[4] We focus here on the requirements 
relating to silica claims.[5]
            
Section 90.004 requires silica claimants to serve a detailed expert 
report on each defendant. Among other requirements, the report must be prepared 
by a physician who has specific qualifications,[6] and the physician (or other medical 
professional “employed by and under the direct supervision and control of the 
physician”) must perform a physical examination of the claimant and take a 
detailed occupational, exposure, medical, and smoking history.[7]
            
The report must verify that the claimant suffers from one or more 
silica-related diseases based on recognized symptoms.[8] It must attach all medical evidence 
supporting the physician’s opinion.[9] The report must also verify that the 
physician has made certain causation findings regarding silica exposure and the 
claimant’s observed ailments.[10] The report must make these causation 
determinations depending on the type of silica-related disease asserted.[11]
            
If the claimant is asserting a claim for silicosis, the report must 
verify a minimal level of impairment under section 90.004(b)(2), requiring “at 
least Class 2 or higher impairment due to silicosis, according to the American 
Medical Association Guides to the Evaluation of Permanent Impairment . . . 
.”
            
Section 90.010(a) provides that “[t]he MDL rules apply to any action 
pending on the date this chapter becomes law in which the claimant alleges 
personal injury or death from exposure to asbestos or silica,” subject to 
certain exceptions. Relevant MDL rules are set out in Rule 13 of the Texas Rules 
of Judicial Administration, created by this Court pursuant to legislative 
authority.[12] The 295th district court of Harris County is the MDL pretrial court for 
personal-injury suits alleging silica exposure.[13] Generally, the MDL pretrial court 
decides all pretrial matters and then remands the case to the trial court.[14]
            
Section 90.006(a) provides, for actions filed on or after the statute’s 
September 1, 2005 effective date, the expert report must be served not later 
than thirty days after the defendant answers or otherwise appears. For actions 
filed after the effective date, the defendant may file a motion to dismiss if 
the claimant fails to file an expert report or files one that does not comply 
with section 90.003 (asbestos claims) or 90.004 (silica claims).[15] 
            
For actions like this one filed before September 1, 2003, the MDL rules 
are inapplicable if the plaintiff files an expert report complying with the 
expert report requirements of Chapter 90.[16] The report is due within 90 days of 
Chapter 90's September 1, 2005 effective date.[17] If the plaintiff misses this deadline 
for filing a compliant report, the defendant may file a notice of transfer to 
the MDL pretrial court.[18] Section 90.010(b) provides:
 
If the 
claimant fails to serve a report complying with Section 90.003 or 90.004 on or 
before the 90th day after the date this chapter becomes law under Subsection 
(a)(2), the defendant may file a notice of transfer to the MDL pretrial court. 
If the MDL pretrial court determines that the claimant served a report that 
complies with Section 90.003 or 90.004 on or before the 90th day after the date 
this chapter becomes law, the MDL pretrial court shall remand the action to the 
court in which the action was filed. If the MDL pretrial court determines that 
the report was not served on or before the 90th day after the date this chapter 
becomes law or that the report served does not comply with Section 90.003 or 
90.004, the MDL pretrial court shall retain jurisdiction over the action 
pursuant to the MDL rules.
 
 
The notice of 
transfer automatically transfers the case without further court order,[19] subject to a motion to remand filed in 
the MDL court and a remand by that court if it determines that the plaintiff had 
filed a compliant report.[20] Absent a successful motion to remand, 
cases thus transferred to the MDL court remain in that court until the claimant 
serves a Chapter 90-compliant report.[21]
            
Contending that Lopez did not file a report complying with Chapter 90, 
GSF filed on December 2, 2005, a notice of transfer to the silica MDL pretrial 
court. Lopez responded, arguing Chapter 90 was preempted by the Jones Act and 
urging the MDL pretrial court to remand the case to the trial court. The MDL 
pretrial court agreed. GSF sought mandamus relief in the court of appeals, which 
also sided with Lopez by holding that “chapter 90 is preempted by federal 
law.”[22] GSF now seeks mandamus relief in this 
Court directing the MDL pretrial court to vacate its remand order.
II. Discussion
A. The “Asbestos Litigation Crisis” Addressed by Chapter 
90
            
The statute enacting Chapter 90 and other codified provisions begins with 
legislative findings concerning asbestos and silica litigation. The Legislature 
stressed the existence of an “asbestos litigation crisis,”[23] noting that Texas leads the nation in 
such suits.[24] It found that this problem is 
exacerbated by the filing of suit, sometimes to avoid limitations problems, 
before the claimant is suffering from any illness affecting his daily life.[25] The Legislature made further findings 
that this litigation has resulted in the bankruptcies of many companies, the 
loss of thousands of jobs, enormous litigation expenses, overcrowded dockets 
that hamper the ability of seriously ill claimants to seek redress, and the 
bleeding of company assets lost to a crush of claims by those “who are not 
functionally or physically impaired.”[26] It warned of a similar crisis looming 
over silica-related actions, evidenced by a recent spike in such claims, and 
raising some of the same concerns applicable to the asbestos crisis.[27] The statute further provides:
 
It is the 
purpose of this Act to protect the right of people with impairing 
asbestos-related and silica-related injuries to pursue their claims for 
compensation in a fair and efficient manner through the Texas court system, 
while at the same time preventing scarce judicial and litigant resources from 
being misdirected by the claims of individuals who have been exposed to asbestos 
or silica but have no functional or physical impairment from asbestos-related or 
silica-related disease.[28]
 
 
            
To address the Legislature’s stated purposes and concerns, Chapter 90 
includes three components on which we focus. First, by requiring detailed expert 
reports early in the litigation process, Chapter 90 endeavors to assure that 
claims are not brought and pursued unless they are supported by reliable expert 
evaluations of the claimant.[29]
            
Second, Chapter 90 attempts to consolidate silica and asbestos cases in a 
single MDL court for pretrial proceedings.[30] The obvious advantages of such 
consolidation include (1) the more efficient resolution of recurring issues by a 
court that acquires expertise in cases with related factual, procedural, and 
substantive legal issues; and (2) consistent rulings in such cases. The 
Legislature has authorized MDL transfers where they will serve the convenience 
of parties and witnesses and “promote the just and efficient conduct of the 
[consolidated] actions.”[31] It has empowered the judicial panel on 
multidistrict litigation to transfer related cases to MDL courts for 
“consolidated or coordinated pretrial proceedings.”[32] In creating the silica pretrial 
MDL action, the panel observed:
 
One virtue 
of transferring related cases to a single pretrial judge is that issues, once 
raised, will be decided the same way in the future. A consistent and steady 
judicial hand at the helm should in fact promote agreements because lawyers will 
know where the court stands on recurring issues. As contested issues arise, the 
pretrial judge will make consistent rulings, which can then be reviewed by the 
appellate courts as appropriate. This, we think, serves Rule 13's goal that our 
system give related cases consistent and efficient 
treatment.[33]
 
 
            
Third, Chapter 90 requires claimants in some cases to establish a minimal 
level of impairment before their cases can proceed.[34]
            
These procedures serve the stated legislative purpose of conserving 
judicial and litigant resources and directing those resources to persons most 
suffering from asbestos and silica injuries. Of these three Chapter 90 
components, we conclude that only the third is preempted by the Jones Act; the 
other two are not preempted and should be followed in Jones Act cases.[35]
B. Mandamus Relief is Warranted
            
A writ of mandamus will issue only if the trial court committed a clear 
abuse of discretion for which the relator has no adequate remedy at law.[36] The adequacy of an appellate remedy must 
be determined by balancing the benefits of mandamus review against its 
detriments.[37] In evaluating benefits and detriments, 
we consider whether mandamus relief will safeguard “important substantive and 
procedural rights from impairment or loss.”[38] In addition to impairment of rights, we 
consider whether mandamus will “allow the appellate courts to give needed and 
helpful direction to the law that would otherwise prove elusive in appeals from 
final judgments.”[39]
            
By remanding the case to the trial court, the MDL pretrial court in 
effect held that, at least as to Lopez, Chapter 90 in its entirety is preempted 
by the Jones Act. This is so because Chapter 90 prescribes, as a result of a 
plaintiff’s failure to file an adequate section 90.004 report, the defendant’s 
right to file a notice of transfer to the MDL pretrial court, as described 
above. That court then retains, dismisses, or remands the case back to the trial 
court depending on whether the report is filed.
            
The MDL pretrial court’s conclusion that Chapter 90 was preempted by the 
Jones Act was erroneous and mandamus relief is appropriate to correct the error. 
As we recently held in In re McAllen Medical 
Center, another case concerning legislatively mandated expert reports, 
mandamus relief is available when the Legislature has enacted a statute to 
address findings “that traditional rules of litigation are creating an ongoing 
crisis,” and “the purposes of the [enacted] statute 
would otherwise be defeated.”[40] These precise grounds for mandamus 
relief are again presented. “Here, the Legislature has already balanced most of 
the relevant costs and benefits for us.”[41]
C. Jones Act Preemption Principles
            
The Jones Act provides that “[a] seaman injured in the course of 
employment . . . may elect to bring a civil action at law . . . against the 
employer.”[42] The Act has been described as “remedial, 
for the benefit and protection of seamen who are peculiarly the wards of 
admiralty.”[43]
            
The preemption of state law by the Jones Act is a unique corner of 
federal preemption law that must be applied with recognition that Jones Act 
cases can be brought in federal or state court.[44] While state law must sometimes yield to 
the need for a uniform and harmonious system of federal maritime law, “this 
limitation still leaves the States a wide scope.”[45] Congress could preempt the entire field 
of maritime law, but has instead left the states “with a considerable 
legislative and judicial competence in the maritime field.”[46] Where Congress has acted in the 
admiralty area, “state regulation is permissible, absent a clear conflict with 
the federal law.”[47]
            
Federal preemption in this context does not always lend itself to simple 
resolution. As the United States Supreme Court observed in one Jones Act case, 
“It would be idle to pretend that the line separating permissible from 
impermissible state regulation is readily discernible in our admiralty 
jurisprudence, or indeed is even entirely consistent within our admiralty 
jurisprudence.”[48]
            
The Court, however, has laid down some general principles. On the one 
hand, substantive rights created by Congress via the Jones Act must 
prevail over inconsistent state substantive law even where the suit is brought 
in state court.[49] On the other hand, it has held that 
state law characterized as procedural is not preempted.[50] The Court has also recognized that 
federal maritime law follows a “reverse Erie” doctrine of sorts, employing the 
use of substantive federal maritime law in state courts but recognizing that 
state procedural law can be followed.[51]
            
Our own cases have recognized this general proposition that a state court 
hearing a Jones Act case “must apply substantive federal maritime law but follow 
state procedure,”[52] and have acknowledged the “reverse 
Erie” 
nature of state court adjudication of Jones Act claims.[53] Unfortunately, a simple rule of Jones 
Act preemption—providing that such cases litigated in state court follow federal 
substantive law and state procedural law—cannot be fashioned from the extant 
jurisprudence. For example, even as to substantive remedies, we have recognized 
that “state law remedies that do not conflict with federal law remedies are 
available to seamen.”[54]
            
In Southern Pacific Co. v. Jensen,[55] the United States Supreme Court held 
that a state workers’ compensation law was preempted by federal general maritime 
law. In an oft-recited standard, the Court held that a state-law remedy is 
preempted by federal maritime law if the state remedy “works material prejudice 
to the characteristic features of the general maritime law, or interferes with 
the proper harmony and uniformity of that law in its international and 
interstate relations.”[56] Because the state law remedy in 
Jensen was “wholly unknown” to federal maritime common law, “incapable of 
enforcement by the ordinary processes of any court,” and inconsistent with 
congressional policy to encourage investments in ships, as indicated by two 
federal statutes, the Court held that the state remedy was preempted by federal 
law.[57]
            
In American Dredging Co. v. Miller, the Court held in a Jones Act 
case that a Louisiana rule making inapplicable the 
doctrine of forum non conveniens in maritime cases was not preempted by 
federal maritime law.[58] Looking to the Jensen standard 
quoted above, the Court noted that the federal doctrine of forum non 
conveniens is a doctrine of general application and did not originate in 
admiralty; therefore, the Louisiana rule did not work material prejudice 
to a characteristic feature of general maritime law.[59] Although recognizing that the state rule 
produced some disuniformity, the Court rejected the 
argument that, under the Jensen standard, the rule interfered with the 
proper harmony and uniformity of federal maritime law.[60] The Court reasoned that the uniformity 
requirement is not absolute, especially on matters of procedure.[61] It noted that uniformity of process is 
not required by admiralty law, that the doctrine of forum non conveniens 
“is nothing more or less than a supervening venue provision,” and that venue 
“goes to process rather than substantive rights—determining which among various 
competent courts will decide the case.”[62] The Court also noted it had previously 
held that venue in Jones Act cases brought in state court should be decided 
under state law,[63] and that “[j]ust as state courts, in deciding admiralty cases, are not 
bound by the venue requirements set forth for federal courts in the United 
States Code, so also they are not bound by the federal common-law venue rule (so 
to speak) of forum non conveniens.”[64]
D. Application of Preemption Principles to this Case
1. 
Non-Preempted Provisions
            
The requirements embedded in Chapter 90 to assure reliable expert 
confirmation of silica-related diseases are not preempted by the Jones Act. 
Nothing in the Jones Act exempts a seaman claiming a silica-related disease from 
establishing, through reliable medical proof, that he in fact suffers from such 
a disease. Federal cases, beginning with Daubert v. Merrell Dow 
Pharmaceuticals, Inc.,[65] have in recent years established 
standards for the admission of expert testimony that focus on the trial court’s 
role in determining the reliability of such testimony. Texas cases have 
developed similar standards that draw heavily from federal jurisprudence.[66] Both federal and state law require expert testimony “grounded ‘in the methods and 
procedures of science.’”[67]
            
To the extent that Jones Act jurisprudence recognizes a special standard 
for proving causation,[68] federal cases have held that this 
causation standard does not exempt Jones Act cases from the general rules for 
admission of expert testimony.[69] We see no basis for holding that 
Texas law 
generally governing the admission of expert testimony, which draws so heavily 
from federal law, is preempted by the Jones Act. This law does not clearly 
conflict with federal maritime law. Under Miller and Jensen, the 
jurisprudence requiring reliable expert testimony has developed in tandem in the 
federal and Texas courts, and is a body of law of general 
application; the use of these general standards does not work material prejudice 
to a characteristic feature of general maritime law. Nor do we see how the use 
of such standards, which apply to Jones Act cases proceeding in federal court, 
would interfere with the proper harmony and uniformity of federal maritime 
law.
            
 Therefore, the provisions of Chapter 90 directed at assuring 
reliable expert confirmation of the existence of one of the medically recognized 
forms of silica-related illness are not preempted. Most of the expert-report 
requirements of section 90.004 can be so characterized. Section 90.004 tracks 
widely if not universally recognized criteria for reliably diagnosing the 
existence of silica-related illnesses by (1) conducting a physical examination 
by a trained professional that includes an appropriate occupational and exposure 
history under section 90.004(a)(1), (a)(2), and (e); (2) identifying a 
silica-related condition based on established radiographic methods and tests 
employed by medical science under section 90.004(a)(3) and (a)(4); and (3) 
ruling out other causes of the observed condition under sections 90.004(b) 
through (d).[70] The failure to establish these criteria 
is grounds for rejecting expert testimony under Daubert.[71]
            
As examples, the requirement of section 90.004(a)(1) that a 
board-certified physician conduct a detailed occupational and exposure history 
is directed at assuring—early in the litigation so as to conserve judicial and 
litigant resources—that the claim of silica-related injury is supported by 
medically reliable expert review. “In order to rule out the multitude of other 
causes of the radiographic findings, it is vitally important for a physician to 
take a thorough occupational/exposure history and medical history.”[72] The requirement of section 
90.004(a)(3)(A), that the expert observe bilateral nodular opacities categorized 
as p, q, or r primarily in the upper lungs, is a standardized method of medical 
science to identify chronic or classic silicosis and distinguishing it from 
asbestosis.[73] The requirements specifying a minimal 
latency period, such as section 90.004(b)(1)’s requirement that the report for a 
claimant alleging silicosis verify that “there has been a sufficient latency 
period for the applicable type of silicosis,” are also intended to assure that 
the claimant is in fact suffering from a silica-related disease under 
established medical science.[74] The requirement that a qualified reader 
find a profusion grading of 1/0 or 1/1, found in section 90.004(a)(3)(A), 
assures that the reader has found at least some abnormality in the x-ray.[75] All of these requirements represent the 
Legislature’s attempt to require a medically valid demonstration of 
silica-related disease as opposed to mere exposure to silica or some other 
substance or mere concern that a disease may develop in the future.
            
Nor are Chapter 90's provisions for consolidating silica-related cases in 
a single court for pretrial disposition preempted by the Jones Act. These 
provisions serve an important state purpose, recognized by the Legislature, of 
streamlining the resolution of silica cases in the state court system and thus 
conserving judicial and litigant resources.        
Moreover, as discussed above, Jones Act preemption principles recognize 
that Jones Act cases can be brought in federal or state courts and that 
adherence to precisely the same rules of procedure and practice are not 
required. Texas courts are not expected to abandon all 
their regular rules of practice and procedure and to adopt federal rules in a 
case simply because a Jones Act claim is alleged. On the contrary, maritime law 
recognizes a “reverse-Erie” principle that generally leaves state courts 
hearing maritime suits to their regular procedures. American Dredging 
recognized that matters of venue have long been the province of state law in 
Jones Act cases brought in state court. As with the doctrine of forum non 
conveniens analyzed in American Dredging, the transfer of 
silica-related Jones Act cases to the MDL pretrial court is a “supervening venue 
provision”[76] where state court procedures can be 
followed. The transfer of silica-related cases to an MDL court for consolidated 
pretrial proceedings does not work material prejudice to a characteristic 
feature of maritime law.
            
In short, the principles of Jones Act preemption are flexible enough to 
accommodate general Texas rules governing the admission of expert 
testimony, and also accommodate the Chapter 90 rules specific to expert 
testimony in cases involving silica-related injuries and the consolidation of 
silica cases in the MDL pretrial court for pretrial proceedings. These 
Texas rules 
and standards are not preempted.
2. 
Preemption of Minimal-Impairment Provision
            
The Jones Act imposes no requirement for a minimal threshold of physical 
injury, nor any limitation that only lung diseases that have progressed to a 
specified level of physical impairment are covered.[77] GSF concedes that Chapter 90 cannot 
impose a requirement that the plaintiff suffer from a minimal level of physical 
impairment before he can obtain relief on his Jones Act claim. Accordingly, 
section 90.004(b)(2), providing that claimants alleging 
silicosis must have sustained “at least Class 2 or higher impairment” cannot be 
applied to Jones Act claims.[78] We further conclude that Chapter 90 must 
not be interpreted to impose a higher standard of proof for causation than the 
federal standard applicable to Jones Act cases.[79]
            
The preemption of section 90.004(b)(2) does not mean that the remaining 
expert-report requirements of Chapter 90 and its provisions for pretrial 
proceedings in the MDL pretrial court are preempted. We hold that these 
non-preempted provisions should be followed in all applicable suits alleging 
silica-related injuries and including a cause of action under the Jones Act. The 
MDL pretrial court therefore erred in remanding this case to the trial 
court.
III. Conclusion
            
We conditionally grant the writ of mandamus and direct the MDL pretrial 
court to vacate its remand order, and to conduct further proceedings in a manner 
consistent with this opinion.[80] We are confident the court will comply, 
and the writ will issue only if it does not.
 
 
          
     ___________________________________
                                    
Don R. Willett
                                    
Justice
 
 
OPINION DELIVERED: 
December 5, 2008








[1] 
The Jones Act provides a cause of action to seamen injured in the course of 
their employment. 46 U.S.C. § 30104.

[2] 
Under the “saving to suitors” clause of 28 U.S.C. § 1333(1), a Jones Act claim 
can be brought in state court. See Engel v. Davenport, 271 U.S. 33, 37 (1926); Stier v. Reading & Bates Corp., 992 S.W.2d 
423, 428–29 (Tex. 1999).

[3] 
See Act of May 16, 2005, 79th Leg., R.S., ch. 
97, § 12, 2005 Tex. Gen. Laws 169, 182 (adopting September 1, 2005 effective 
date).

[4] 
Tex. Civ. Prac. & Rem. Code 
§§ 90.001–90.012.

[5] 
Although Lopez alleged injuries from both asbestos and silica, GSF filed a 
notice of transfer to the silica MDL pretrial court, and this mandamus action 
concerns that court’s decision to remand the case to the trial court where it 
was originally filed. We focus, therefore, on the Chapter 90 components relating 
to silica-related injuries.

[6] 
The report must be prepared “by a physician who is board certified in pulmonary 
medicine, internal medicine, oncology, pathology, or, with respect to a claim 
for silicosis, occupational medicine and whose license and certification were 
not on inactive status at the time the report was made.” Id. § 
90.004(a).

[7] 
Id. §§ 
90.004(a)(1)–(2), (e).

[8] 
Id. § 
90.004(a)(3).

[9] 
Id. § 
90.004(a)(4).

[10] Id. §§ 90.004(b)–(d).

[11] Id. For example, section 90.004(d) 
states, “If the claimant is asserting a claim for any disease other than 
silicosis and lung cancer alleged to be related to exposure to silica, the 
report required by Subsection (a) must also verify that the physician has 
diagnosed the exposed person with a disease other than silicosis or 
silica-related lung cancer and has concluded that the exposed person’s disease 
is not more probably the result of causes other than silica exposure.”

[12] See Tex. Gov’t Code §§ 74.024, 
74.163.

[13] See In re Silica Prods. Liab. Litig., 166 S.W.3d 3 
(Tex. M.D.L. Panel 2004) (granting motion to establish Silica MDL pretrial 
court); Tex. Gov’t Code § 74.162 
(authorizing judicial panel on multidistrict litigation to transfer cases to MDL 
pretrial court).

[14] See Tex. Gov’t Code § 74.162; Tex. R. Jud. 
Admin. 13.6, 13.7, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. F app. (Vernon).

[15] Tex. Civ. Prac. & Rem. Code § 
90.007(a).

[16] Id. § 90.010(a)(2).

[17] Id. Section 90.010(a)(3) separately provides that the MDL rules do not apply to 
actions filed before September 1, 2003, if the claimant “has been diagnosed with 
malignant mesothelioma, other malignant 
asbestos-related cancer, or malignant silica-related cancer.”

[18] Id. § 90.010(b).

[19] See Tex. R. Jud. Admin. 13.11(e).

[20] Tex. Civ. Prac. & Rem. Code § 
90.010(b).

[21] Id. § 90.010(d). Besides the provisions 
concerning expert reports and proceedings before an MDL court, Chapter 90 has 
other miscellaneous provisions. For example, section 90.009 provides, “Unless 
all parties agree otherwise, claims relating to more than one exposed person may 
not be joined for a single trial.”

[22] ___ S.W.3d ___,___.

[23] Act of May 16, 2005, 79th Leg., R.S., ch. 97, §§ 1(d),(f), 2005 Tex. Gen. 
Laws 169; see also Amchem Prods., 
Inc. v. Windsor, 521 U.S. 591, 597 (1997) (also noting an 
“asbestos-litigation crisis” confronting the nation).

[24] Act of May 16, 2005, 79th Leg., R.S., ch 97, § 1(e), 2005 Tex. Gen. Laws 169.

[25] Id. § 1(f).

[26] Id. §§ 1(g)–(h), 2005 Tex. Gen. Laws 
169–70.

[27] Id. §§ 1(l)–(m), 2005 Tex. Gen. 
Laws 170.

[28] Id. § 1(n).

[29] See Tex. Civ. Prac. & Rem. Code §§ 
90.003–90.004.

[30] See id. § 90.010.

[31] Tex. Gov’t Code § 74.162.

[32] Id.

[33] In re Silica Prods. Liab. Litig., 166 S.W.3d 3, 6 
(Tex. M.D.L. Panel 2004).

[34] See Tex. Civ. Prac. & Rem. Code § 
90.004(b)(2).

[35] Some causation provisions of Chapter 90 may 
also be preempted. See infra note 79 and accompanying text.

[36] In re Prudential Ins. Co. of Am., 
148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).

[37] In re McAllen Med. Ctr., ___S.W.3d___,___(Tex. 2008) (orig. proceeding); Prudential 
Ins. Co. of Am., 148 S.W.3d at 136.

[38] Prudential Ins. Co. of Am., 148 S.W.3d at 136.

[39] Id.

[40] ___ S.W.3d at ___.

[41] Id. at ___.

[42] 46 U.S.C. § 30104.

[43] The Arizona v. Anelich, 298 
U.S. 110, 123 (1936).

[44] See supra note 2. We have noted that 
preemption cases arising under admiralty law typically do not even mention the 
more general line of preemption authority under the Supremacy Clause. Stier v. Reading & Bates Corp., 992 S.W.2d 
423, 428 (Tex. 1999).

[45] Romero v. Int’l Terminal Operating 
Co., 358 U.S. 354, 373 (1959).

[46] David W. Robertson, Displacement of State Law by Federal 
Maritime Law, 26 J. Mar. L. & Com. 325, 327 (1995).

[47] Askew v. Am. Waterways Operators, 
411 U.S. 325, 341 (1973).

[48] Am. Dredging Co. v. Miller, 510 
U.S. 443, 452 (1994).

[49] See Engel v. Davenport, 271 U.S. 33, 
39 (1926) (holding that the Jones Act statute of limitations is a “provision 
affecting the substantive right” created by the Jones Act and must prevail over 
inconsistent state statute of limitations).

[50] Am. Dredging Co., 510 U.S. at 453 
(characterizing the state doctrine of forum non conveniens as “procedural 
rather than substantive” and noting that “[u]niformity 
of process (beyond the rudimentary elements of procedural fairness) is assuredly 
not what the law of admiralty seeks to achieve, since it is supposed to apply in 
all the courts of the world”).

[51] See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23 (1986) (“Stated another 
way, the ‘savings to suitors’ clause allows state courts to entertain in 
personam maritime causes of action, but in such 
cases the extent to which state law may be used to remedy maritime injuries is 
constrained by a so-called ‘reverse-Erie’ doctrine which requires that 
the substantive remedies afforded by the States conform to governing federal 
maritime standards.”).

[52] Mar. Overseas Corp. v. Ellis, 971 
S.W.2d 402, 406 (Tex. 1998).

[53] Texaco Ref. & Mktg., Inc. v. Estate 
of Dau Van Tran, 808 S.W.2d 61, 64 (Tex. 1991).

[54] Stier 
v. Reading & Bates Corp., 992 S.W.2d 423, 425 (Tex. 1999); see 
also Robertson, supra note 
46, at 348 (“Anyone who began studying law after 1940 will have been brought up 
on two rather intimidating notions about drawing the substance-procedure 
distinction: it is done differently in different contexts, and in all contexts 
it is hard to do.” (footnotes omitted)).

[55] 244 U.S. 205 
(1917).

[56] Id. at 216.

[57] Id. at 218.

[58] 510 U.S. 443 
(1994).

[59] Id. at 450.

[60] Id. at 450-53.

[61] Id. at 451.

[62] Id. at 453.

[63] Id. at 457 (discussing 
Bainbridge v. Merch. & Miners Transp. Co., 287 U.S. 278 (1932)).

[64] Id. at 453.

[65] 509 U.S. 579 
(1993).

[66] See, e.g., Mack Trucks, Inc. v. 
Tamez, 206 S.W.3d 572, 579 (Tex. 2006) (applying 
Kumho Tire Co. v. Carmichael, 526 U.S. 
137 (1999)); Gammill v. Jack Williams 
Chevrolet, Inc., 972 S.W.2d 713, 720–28 (Tex. 1998) (applying Daubert 
and Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997), and recognizing 
that relevancy and reliability requirements under Daubert’s interpretation of Federal Rule of Evidence 
702 are also applicable to Texas Rule of Evidence 702); Merrell Dow Pharm., Inc. v. Havner, 953 
S.W.2d 706, 712 (Tex. 1997) (stating that reliability of expert testimony under 
Texas law “is determined by looking at numerous factors including those set 
forth in Robinson and Daubert”); E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 
549, 556–58 (Tex. 1996) (stating that “[w]e are persuaded by the reasoning in 
Daubert” and adopting standards for admission of expert testimony 
consistent with Daubert’s focus on relevance 
and a reliabile foundation).

[67] Robinson, 923 S.W.2d at 557 (quoting 
Daubert, 509 U.S. at 590).

[68] See infra note 79.

[69] See Wills v. Amerada Hess Corp., 379 
F.3d 32, 47 (2d Cir. 2004) (holding that even though a Jones Act “plaintiff 
faces a relaxed burden of proof with regard to causation, the district court’s 
admission of expert testimony is nonetheless governed by the strictures of 
[Evidence] Rule 702 and Daubert,” and noting that the Sixth and Ninth 
Circuits have reached the same conclusion).

[70] See In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 
563, 622 (S.D. Tex. 2005) (“A diagnosis [of silicosis] requires (1) an adequate 
exposure to silica dust with an appropriate latency period, (2) radiographic 
evidence of silicosis, and (3) the absence of any good reason to believe that 
the radiographic findings are the result of some other condition . . . . 
[T]hese three criteria are universally accepted, as 
demonstrated by learned treatises and experts in the field.”).

[71] See id. at 624–25:
 
In the absence of an appropriate work/exposure history, 
there is no way for the diagnosing doctors to have known the potential 
intensities of respirable silica exposure, the 
duration of the exposure, information as to dosage . . . as well as information 
as to possible alternative causes of the radiographic findings . . . . Looking 
no further than the first criterion, virtually all of the diagnoses fail to 
satisfy the minimum, medically-acceptable criteria for the diagnosis of 
silicosis, and therefore, the testimony of the challenged doctors cannot be 
admissible under the standards set by Rule 702 and Daubert.
 
(footnote omitted). See also Borg-Warner Corp. v. 
Flores, 232 S.W.3d 765, 771–72 (Tex. 2007) (“[A]bsent any evidence of dose, the jury could not evaluate the 
quantity of respirable asbestos to which Flores might 
have been exposed or whether those amounts were sufficient to cause 
asbestosis.”).

[72] In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 
at 593 (also noting that “it is imperative that the diagnosing physician take at 
least some portion of the histories”).

[73] See id. at 591–92 (noting that 
chronic or classic silicosis is characterized by small round nodules, primarily 
in the upper lungs, indicated by a p, q, or r rating under the International 
Labour Office (ILO) system standardizing the 
interpretation of chest x-rays, and that asbestosis is characterized by linear 
scarring primarily in the lower lungs, characterized by irregular opacities 
indicated by an s, t, or u rating in the ILO system); see also id. at 603 
(noting that one testing company “managed to generate” 6,757 MDL silicosis 
plaintiffs, of which 4,031 had previously made asbestosis claims, and that 
“[t]he magnitude of this feat becomes evident when one considers that many pulmonologists, pathologists and B-readers go their entire 
careers without encountering a single patient with both silicosis and 
asbestosis”). Sections 90.003(a)(2)(C) and 90.003(c)(2), applicable to 
asbestos-related claims, therefore specify that asbestosis can be verified by an 
x-ray showing irregular opacities indicated by an s, t, or u rating, among other 
requirements. 

[74] See id. at 569 (“Chronic or classic 
silicosis, the most common form, typically requires at least 15–20 years of 
moderate to low exposure of respirable 
silica.”).

[75] See id. at 591 (explaining that 1/0 
and 1/1 ILO designations indicate some abnormality, while a first number of “0” 
indicates no abnormality found, and first numbers greater than “1” indicate 
increasingly abnormal readings).

[76] Am. Dredging Co. v. Miller, 510 
U.S. 443, 453 (1994).

[77] We do not mean to suggest that the Jones 
Act dispenses entirely with a requirement of physical injury, only that we are 
unaware of a minimal level of physical impairment under the Act. See Norfolk 
& W. Ry. Co. v. Ayers, 538 U.S. 135, 141, 159 
(2003) (holding that in a case brought under the Federal Employers’ Liability 
Act (FELA), 45 U.S.C. §§ 51–60, a plaintiff already suffering from asbestosis 
can recover emotional distress damages associated with fear of developing 
cancer, but a disease-free plaintiff merely exposed to asbestos cannot recover 
emotional distress damages); Mar. Overseas Corp. v. Ellis, 971 S.W.2d 
402, 406 (Tex. 1998) (“The Jones Act expressly incorporates FELA and the case 
law developing that statute.”).

[78] We again note that we have not examined the 
provisions of Chapter 90 relating to asbestos-related claims, and express no 
opinion on whether any such provisions are preempted. 

[79] See Mar. Overseas Corp., 971 S.W.2d 
at 406 (stating that the Jones Act requires use of a relaxed causation standard, 
one that asks whether “employer negligence played any part, even the slightest, 
in producing the injury”) (quoting Rogers v. Mo. Pac. R.R. Co., 352 U.S. 
500, 506 (1957)); but see Norfolk S. Ry. Co. v. 
Sorrell, 549 U.S. 158, 172–77 (2007) (Souter, J., 
concurring) (concluding, in FELA case, that Rogers has been 
misinterpreted and did not alter the common-law causation standard, but instead 
merely rejected a sole causation requirement); see also id. at 178 
(Ginsburg, J., concurring in the judgment) (“Today’s opinion leaves in place 
precedent solidly establishing that the causation standard in FELA actions is 
more ‘relaxed’ than in tort litigation generally.”).

[80] Lopez contends in the pending mandamus 
action, apparently for the first time, that he filed a physician report that 
complied with the non-preempted provisions of Chapter 90. GSF contends 
otherwise. The MDL pretrial court and the court of appeals did not consider this 
issue, and instead based their analysis on Lopez’s argument that Chapter 90 was 
entirely inapplicable to Jones Act cases. We leave resolution of this issue to 
the MDL pretrial court.